## Case No. 3,251.

In re CORNWALL.

[4 N. B. R. 400 (Quarto, 134.)] [1]

District Court, D. Connecticut. 1871. [2]

CONSIDERATION OF PROMISSORY NOTE—GIFT—BANKRUPTCY.

A gift is not in itself a sufficient consideration to support a promise of payment, even if expressed in a note, neither is a mere moral consideration sufficient to support a promise to pay. A note given in place of a lost note, if there was no consideration for the making of the original (or lost) note, whether a voluntary gift, is not a sufficient claim on which to base a petition for bankruptcy proceedings.

In bankruptcy.

E. E. Marvin, for petitioner.

Charles E. Perkins and Alfred Hall, for respondent.

SHIPMAN, District Judge. This was a creditor's petition, brought by Nathaniel O. Cornwall, praying that David Cornwall might be declared a bankrupt. The petiti[o]ner alleges that his demand exceeds the sum of two hundred and fifty dollars, and that the respondent has committed an act of bankruptcy within six months next preceding the filing of the petition. These allegations are denied by a special answer. The indebtedness of the creditor is thus stated in his petition: "A certain promissory note for money loaned to and signed by said David Cornwall, payable to the order of your petitioner, of which the following is a copy: 'Portland, August 29, 1869. For value received I promise to pay Nath'l O. Cornwall, or order, five hundred dollars on demand, with interest from date. $500. (Signed) David Cornwall.' The further sum of five hundred and twenty-eight dollars and eighty-eight cents, loaned to the said David Cornwall, July 14, 1854, the receipt of which is acknowledged in writing, with promise to deposit said sum for petitioner's benefit in the savings bank, etc., amounting to one thousand and twenty-eight dollars and eighty-eight cents, exclusive of interest."

The answer of the respondent avers, that the note was without consideration, and therefore void, and that the alleged loan of five hundred and twenty-eight dollars and eighty-eight cents is barred by the statute of limitation. A brief statement of facts will show the light in which these transactions are presented. The respondent is an old gentleman eighty years of age. The petitioner is his son. In 1854 the latter was in South America, engaged in business, while the former resided at Portland, in this state, where he had always lived. He was somewhat embarrassed by debts. He had given the petitioner a liberal education, part of the advancements for which had been made to the latter after he was twenty-one years of

---

[1] [Reprinted by permission.]
[2] [Affirmed in Case No. 3,250.]

age. Some of these advancements had been paid by the petitioner, but whether or not all had, does not clearly appear, and is not important. Prior to 1854 the respondent had written the petitioner asking for a loan to assist in paying off his debts. In March, 1854, the petitioner forwarded to the respondent a bill or order, on a house in New York, for five hundred and ten dollars, which, when received by the respondent, amounted, with interest, to five hundred and twenty-eight dollars and eighty-eight cents. In the letter containing this remittance the petitioner requested the respondent to deposit the avails in some savings bank paying six per cent., in the name of the former, so that the same would not, in the event of the respondent's death, become mingled with the latter's estate. He also informed the respondent that he could collect the interest as it became due and make use of it, adding, "I intend this to be the beginning of a sinking fund which may help to clear off your embarrassments in time." The respondent, on the 14th of July, 1854, wrote the petitioner advising him of the receipt of the amount, and stating that he had not deposited it as requested, but had applied it in payment of his (respondent's) "church debt," adding, "and shall, as soon as it is in my power, deposit (it) in the savings bank, according to your direction." In November following the respondent wrote again, substantially to the same effect. Both these letters were received by the petitioner, and there is no proof in this case that the latter ever made any objection to the disposition made of the money. On the contrary, I infer from the evidence, and find as matter of fact, that he acquiesced. I find, too, from the evidence of the petitioner himself, that he never expected to call upon the respondent for the payment of this money, but did expect to collect the amount out of the latter's estate after his death. No promise has ever been made by the respondent to pay this sum since November 3, 1854.

The question arises, is the statute of limitation a bar to this claim? It is obvious that it is so, unless the claim of the petitioner, that it was not an ordinary debt, but a trust against which the statute did not run, is well founded. Undoubtedly, where a trust in the strict and technical sense exists, cognizable only in a court of equity, it will not be affected by the statute of limitations. As was remarked by Lord Redesdale, in Hovenden v. Lord Annesley, 2 Schoales & L. 607, "if a trustee is in possession, and does not execute his trust, the possession of the trustee is the possession of the cestui que trust; and if the only circumstance is that he does not perform his trust, his possession operates nothing as a bar, because his possession is according to his title." But he is here speaking only of direct trusts and those over which courts of equity have exclusive jurisdiction. Direct trusts are usually created by deed or will, though trusts equally binding sometimes arise out of other acts of the parties or the relations to which the law holds them, jurisdiction over which belongs exclusively to courts of equity. But no such trust was created in this case. The respondent was never the trustee of this five hundred and ten dollars. He was the agent of the petitioner to deposit it in the savings bank, and although his failure to comply with the request of the petitioner was in a certain popular sense a breach of trust, it was not so in any sense known to the law. The respondent converted the sum sent him to his own use, and immediately informed the petitioner that he held himself as his debtor for the amount, and that he would place it to his credit as soon as he could. To this the petitioner made no objection. The latter describes it in his petition as a "loan to the said David Cornwall." He never asked him to repay it, but says in his testimony that he did not expect to collect it from him while he lived, but intended to collect it of his estate after his death. I think it no strained inference to hold, as matter of fact, that the petitioner assented to the disposition made of the money, and treated it as a debt due him from his father. His notion that the law would still regard it as a trust, and thus exempt it from the bar of the statute, cannot change the fact nor the principles applicable to it. From the day he was advised of its conversion and assented to it, it was a legal debt, enforceable at law and not in equity. No preliminary demand was necessary, for the conversion was admitted, and, as I have already said, impliedly assented to. From that date it was a simple legal demand, upon which the statute of limitations ran. No subsequent promise has ever relieved it from the operation of the statute, and as it is now set up in answer to the demand, it is a conclusive bar.

As to the note for five hundred dollars. The origin of this was somewhat peculiar. The petitioner, in 1859, returned from South America on a visit, and while at his father's home in Portland, which was then in a somewhat dilapidated condition, the propriety of some repairs on it was a subject of conversation in the family. The respondent said he was not able to defray the expense. The petitioner urged that the repairs be made, and voluntarily advanced the money, five hundred dollars, for that purpose. He says the advance was a loan, while the respondent insists that it was a gift. On this point the evidence is conflicting. But after mature consideration, I find, as matter of fact, that the advance of this five hundred dollars was, in terms, and so understood by both parties at the time, an absolute gift. Two hundred dollars were immediately advanced, and the balance a few months later. After the first two hundred dollars were paid, and before the payment of the balance, the petitioner requested the respondent to give him a note for the whole five hundred. As

to the reasons which induced the petitioner to ask for the note, the evidence is also conflicting; but I find, as matter of fact, that he obtained the note after objection by the respondent, and on the assurance that the whole sum of five hundred dollars was a free gift, and that he did not intend to require the respondent to pay it; but that he would hold it, and in the event his father should become embarrassed again, the petitioner could, by means of the note, realize something out of the estate for the benefit of his mother and sisters.

Passing now the element of possible prospective fraud in this transaction, let us inquire what was the real consideration of this note? It was this absolute gift of five hundred dollars—a gift made, not on request of the donee, but voluntarily and freely by the donor, and accepted by the donee. The note was not exacted on consideration of the two hundred dollars which had been paid, nor as a condition on which the three hundred dollars more was to be paid. The only consideration was this gift. This was not such a consideration as will support the promise contained in the note; at most it was only a moral consideration, which, as Baron Parke said in Jennings v. Brown, 9 Mees. & W. 501, is nothing. Notwithstanding some dicta, and perhaps decisions, to the contrary, it is now settled that a mere moral consideration is not sufficient to support a promise. In Eastwood v. Kenyon, 11 Adol. & E. 438, it was decided that a pecuniary benefit, voluntarily conferred by the plaintiff and accepted by the defendant, is not such a consideration as will support an action of assumpsit on a subsequent express promise by the defendant to reimburse the plaintiff. Lord Denmore, in giving his opinion in that case, cited with approval from the note to Wennall v. Adney, 3 Bos. & P. 249, the doctrine that "an express promise can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original cause of action if the obligation on which it is founded could never have been enforced at law, though not barred of any legal maxim or statute provision." Now, a gift made and accepted leaves the parties thereto just where they were before, so far as their legal relations are concerned. The gift is not recoverable back, any more than a promise to make a gift would be enforceable. The law will not enforce its restitution or damages for its detention, through the medium of an implied promise, not because of any rule of public policy, such as renders the contracts of infants and married women, or contracts contra bonas mores, void; but, because no legal obligation or duty ever existed, whatever the condition of the parties, or the time, or circumstances of the transaction, upon which the law will raise an implied promise. An express promise,

therefore, founded upon a naked gift, can never have anything more than a moral consideration to support it. There is no legal obligation or duty which such a promise can reach and rest on. There never was any legal duty or obligation, once existing, but afterwards barred or suspended, for such a promise to reach and revive. Such a promise, therefore, rests, in the terse language of Baron Parke, upon nothing.

Though the note described in the petition is dated and was actually given in 1869, yet it was a mere substitute for the first one given in 1859, the latter having been lost. It was given upon the request of the petitioner, and upon no other consideration than the first one. It was a mere renewal or repetition of the original promise, and is, like that, without consideration and void. It follows that the creditor has proved no demand against the respondent. This conclusion renders the consideration of the alleged act of bankruptcy unnecessary. Let the petition be dismissed with costs.

[NOTE. Nathaniel O. Cornwall petitioned the circuit court for the review and reversal of the order herein, and the order dismissing the petition was affirmed. Case No. 3,250.]